IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 09-669-3 |
| | : | |
| HAROLD MARTINEZ | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                            February 11, 2011

Defendant Harold Martinez asks this Court to suppress items law enforcement officers seized from the trunk of his car following his arrest, including bolt cutters, gloves, large screwdrivers, and a steel baseball bat. Although Martinez consented to the search, he argues his consent was not voluntary because he was severely beaten during the course of his arrest and the officer who requested his consent did not advise Martinez he could refuse. Because an examination of the totality of the circumstances reveals Martinez's consent to the search of his car was voluntary, Martinez's motion is denied.

**FINDINGS OF FACT**

1. Martinez was arrested in the early evening on September 16, 2009, in the parking lot of a Taco Bell/Kentucky Fried Chicken restaurant in Philadelphia, Pennsylvania, where he was sitting in the driver's seat of a Lincoln Town Car.

2. At the suppression hearing, Martinez alleged he was severely beaten during his arrest.[1] As

---

[1] Specifically, Martinez testified he was approached by law enforcement officers who took aim at him through the windshield of his car with a long weapon Martinez, himself a former police officer in the Dominican Republic, could not identify. Two of the officers then came to the driver's side door, pulled Martinez out of the car, and put him face-down on the ground. One of the officers held Martinez down with his foot while handcuffing him, and then proceeded to strike Martinez in the head ten to twenty times with his fists, causing him to become dizzy. The officer also kicked Martinez. The officer then asked Martinez how to open the trunk of the car, and Martinez opened

discussed below, Martinez's testimony is not credible.

3. Within a few minutes after Martinez's arrest, Special Agent Alex Zuchman approached him, accompanied by Officer Arroyo, a Philadelphia police officer who spoke fluent Spanish.[2] Agent Zuchman asked Martinez in English if he could look in Martinez's car, and Officer Arroyo translated the question into Spanish. Martinez agreed in English, telling Agent Zuchman "no problem" because he "had nothing to be afraid of." Agent Zuchman did not advise Martinez he had the right not to consent to the search.

4. Agent Zuchman believed Martinez understood English because Martinez answered his questions in English and began to answer questions even before Zuchman had finished asking them. Nevertheless, Agent Zuchman continued to have Officer Arroyo translate his questions into Spanish. Agent Zuchman asked Martinez if he had any cell phones, and Martinez responded his phones were in the car. Agent Zuchman retrieved the cell phones and asked if he could look through them. Martinez again responded, "no problem."

5. Agent Zuchman spoke to Martinez in a calm manner, without yelling at him, and Martinez responded calmly. Although Zuchman had a weapon visible on his person during his interaction with Martinez, he did not draw his weapon. Agent Zuchman did not recall whether Martinez was handcuffed during their interaction.

6. Martinez did not seem disoriented or injured in any way during his interaction with Agent

---

it.

[2] Although Martinez testified Agent Zuchman did not approach him until 20-30 minutes after he was arrested, Zuchman estimated he interacted with Martinez within a few minutes after his arrest. This Court finds Agent Zuchman's testimony credible, as Zuchman was already present at the parking lot during Martinez's arrest, participating in the arrest of one or more of Martinez's co-defendants.

2

Zuchman, and did not complain of any injuries or pain. Although it is Agent Zuchman's practice, when taking an injured person into custody, to get immediate medical attention for the person, he had no reason to even ask Martinez what was wrong because there were no apparent physical injuries.

7. In addition to Martinez, Agent Zuchman asked two of Martinez's co-defendants for permission to search their cars, which were also parked in the Taco Bell/Kentucky Fried Chicken parking lot. Agent Zuchman asked the defendants for consent at the scene of the arrests so as to avoid any confusion later on as to who was consenting to a search of which car. Although Agent Zuchman had access to written consent forms, he chose not to use them to avoid having the defendants witness each other signing the forms.

8. Following his arrest, Martinez was taken to the Homeland Security Investigations office at 1600 Callowhill Street in Philadelphia, where he was processed by Special Agent James Martinelli, who read Martinez his Miranda rights in English and in Spanish. Agent Martinelli also transported Martinez and his co-defendants to the Federal Detention Center, where he completed an intake processing form for Martinez, asking him questions and recording his answers on the form.

9. Martinez did not complain of any injuries or pain at any time during his processing or transfer, and did not appear to be sick or injured in any way.[3]

10. In accordance with his usual practice, Agent Martinelli asked Martinez separately (1) whether he had any injuries and (2) whether he was taking any medications. Martinez responded "no" to both questions.

---

[3] Martinez testified he had a number of swellings, which he described as "swollen balls," around his skull, but he conceded he did not tell anyone at the Callowhill Street office that he had been beaten by police.

3

11. On September 17, 2009, the day after Martinez was brought to the Federal Detention Center, registered nurse Linda Pascale conducted a medical screening of him, asking him questions from a four-page "Health Screen" form and recording his responses. In conducting the screening, which lasted less than ten minutes, Pascale spoke to Martinez in a combination of English and Spanish because Martinez told her he spoke a small amount of English.

12. As is her practice, Pascale observed Martinez as part of the screening process, looking for cuts or bruises and watching his behavior to determine whether there were any issues for further assessment.[4] If she had found an injury, she would have documented it on the form as part of her routine practice, recording the location and a description of the injury and asking follow-up questions about what happened. Similarly, if Martinez had reported he was injured during his arrest, Pascale would have documented his report.

13. Martinez's Health Screen form does not mention any injuries; instead the form reflects that Martinez denied having any "current painful condition" and did not mention any head injuries as "current medical conditions." The only reference to any sort of current discomfort was Martinez's affirmative response stating he had pain in his teeth or mouth. Pascale also recorded that Martinez had reported the past medical conditions of a broken right shoulder and an appendix operation.

14. Martinez did not tell Pascale he had been injured during his arrest, and Pascale did not see any injuries on Martinez during the screening.[5]

---

[4] In addition, detainees are screened for contraband and weapons before they are brought to the medical screening area, and if the officers conducting this prior screening process find any evidence of injury, they will bring the detainee to the nurse doing the medical screening so the nurse can observe and document the injury.

[5] Although Martinez testified he told the nurse about the beating he claims to have received during his medical screening the day after he arrived at the Federal Detention Center, based on her review

15.     Martinez's account of the severe beating he received during his arrest is not credible because multiple witnesses who saw him after the supposed incident observed he was uninjured and because he did not report any injuries resulting from the beating even when asked specifically if he had any injuries or pain.

**DISCUSSION**

Although the Fourth Amendment ordinarily prohibits searches "conducted without a warrant issued upon probable cause," it is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). To justify a search based on consent, the Government "'has the burden of proving that the consent was, in fact, freely and voluntarily given.'" *Id.* at 222 (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). Whether consent to a search was voluntary "is a question of fact to be determined from the totality of the circumstances." *Id.* at 227. In making this determination, a court should consider "the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment." *United States v. Price*, 558 F.3d 270, 278 (3d Cir. 2009). Other relevant factors include "the setting in which the consent was obtained [and] the parties' verbal and nonverbal actions." *Id.* (citation omitted).

Here, the encounter leading to Martinez's consent was brief and did not involve repeated questioning or other forms of coercion. Within a few minutes of Martinez's arrest, Agent Zuchman

---

of Martinez's Health Screen form and her independent recollection of Martinez, Pascale testified she is 100 percent sure both that Martinez did not tell her he had been injured and that she did not see any injuries. Martinez's testimony is not credible.

asked him for permission to search his vehicle, and Martinez immediately responded, "no problem." Martinez also readily disclosed that he had cell phones in his car and gave Agent Zuchman permission to look through the phones. Martinez was in custody and may have been in handcuffs at the time Agent Zuchman approached him; however, Agent Zuchman spoke calmly to Martinez and did not yell or draw his weapon. Nothing about Martinez's age, education, or intelligence suggests his consent was involuntary. Although Martinez is not a fluent English speaker, he understands some English, and Officer Arroyo served as a translator during Martinez's interactions with Agent Zuchman. Moreover, Martinez himself was a police officer for four years in the Dominican Republic prior to coming to the United States and therefore had some familiarity with law enforcement.

Martinez argues his consent was involuntary because he was beaten during his arrest and because Agent Zuchman did not advise him of his right to refuse consent. As to the former, Martinez's allegations regarding the beating are not credible for the reasons stated above. As to the latter, it is undisputed that Agent Zuchman did not advise Martinez he had the right to refuse consent to the search. However, knowledge of the right to refuse consent, while a factor to be considered, "is not a prerequisite of a voluntary consent." *Schneckloth*, 412 U.S. at 234; *United States v. Kim*, 27 F.3d 947, 954 (3d Cir. 1994). Although the failure to advise Martinez of his right to refuse consent weighs against a finding of voluntariness, the remaining factors support a finding that Martinez's consent was given voluntarily. Upon consideration of the totality of the circumstances, this Court finds the Government has proven Martinez's consent was freely and voluntarily given. The search of his car and cell phones based upon such consent was therefore lawful, and there is thus no reason to suppress any of the items seized during the search.

**CONCLUSIONS OF LAW**

1.      Because Martinez's consent to the search of his car was freely and voluntarily given, the search did not violate the Fourth Amendment.

2.      The items seized pursuant to the lawful search are admissible, subject to the Federal Rules of Evidence.

      Martinez's motion to suppress is denied.  An appropriate Order follows.

                         BY THE COURT:

                            /s/ Juan R. Sánchez
                         Juan R. Sánchez